# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| BENJAMIN LEE HINES, SR. AND ANDRIUS DAMONE VITTO | CIVIL ACTION NO. 6:15-CV-0033 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| SOUTHERN STATES OFFSHORE, INC. | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Before the Court are a Motion for Partial Summary Judgment Regarding Hines's Claim for Economic Loss [Record Document 49], a Motion for Partial Summary Judgment Regarding Plaintiffs' Claims for Past Medical Expenses [Record Document 48], and a Motion in Limine Regarding Past Medical Expenses Paid by Third Party Insurer [Record Document 38], filed by Defendant, Southern States Offshore, Inc. ("SSO"). The respective parties have filed opposition and reply briefs to the motions, all of which have been reviewed by the undersigned. For the reasons discussed below, the motions are **DENIED**. Because Benjamin Hines, Sr. ("Hines") has produced sufficient evidence of his income from his part-time business to survive summary judgment, the Court denies SSO's motion regarding his economic loss claim. Because the subrogation provisions in Plaintiffs' insurance contracts do not prevent Plaintiffs from recovering the "write-off" amounts, the Court denies SSO's motion in limine and motion for summary judgment regarding Plaintiffs' claims for past medical expenses.

**I. Background**

    **A. Factual Background**

On September 27, 2014, Hines and Andrius Vitto ("Vitto") (collectively, "Plaintiffs") were fishing from Hines's recreational fishing vessel near Intracoastal City in Vermillion Parish. [Record Document 2 at 2]. They allege that the M/V Southern Belle, a vessel owned by SSO, traveled along the waterway at an excessive speed, creating a wake that swamped Hines's vessel. [Record Document 2 at 2–3]. According to Plaintiffs, Hines was thrown around in the boat, and Vitto was thrown out of the boat entirely; both suffered various physical injuries. [Record Document 2 at 3]. Plaintiffs allege that the negligence of SSO or its employees caused their injuries. [Record Document 2 at 3–4].

    **B. Procedural History**

Plaintiffs filed the instant personal injury suit under the Court's maritime jurisdiction pursuant to 28 U.S.C. § 1333 (2012). [Record Document 2 at 1]. SSO filed a motion in limine, seeking to exclude evidence of past medical expenses paid by Blue Cross Blue Shield of Louisiana ("BCBSLA"), Plaintiffs' health insurer. [Record Document 38]. SSO subsequently filed a motion for summary judgment on the same issue, urging the Court to find as a matter of law that because Plaintiffs' insurance contracts with BCBSLA ("Plan Agreements") contained subrogation clauses, Plaintiffs could recover neither the amounts BCBSLA paid nor the amounts of any negotiated "write-off." [Record Document 48]. SSO also filed a motion for partial summary judgment seeking dismissal of Hines's claim for economic loss to his part-time lawn maintenance business. [Record Document 49].

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal citations and quotation marks omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. *Little*, 37 F.3d at 1075.

### III. Law and Analysis

#### A. Hines's Economic Loss

Hines seeks to recover past and future income that he has allegedly lost as a result of the accident. He has testified that he operates a lawn care business in addition to his employment with the St. Mary Parish School Board. [Record Document 49-2 at 3, 49-4 at 1, 52-1 at 1]. According to Hines, his business grosses $3,000 per week; before the accident, his net weekly income from this business was $2,200, while after the accident this was reduced to $1,600 due to increased expenses and having to hire another person to physically mow the lawns. [Record Document 52 at 2; 52-2 at 5, 7–10]. Hines thus alleges that he has lost and will continue to lose $600 per week as a result of the accident. [Record Document 52 at 2].

In its motion, SSO raises two arguments: (1) that Hines has presented insufficient evidence to meet his burden of production; and (2) that he cannot recover this lost income because he did not report it on his tax returns. [Record Document 49-1 at 2–3].

##### 1. Evidentiary Burden

SSO argues that Hines "is unable to show any 'actual wage losses' as he has never reported this income and has no way to quantify his income from his lawn business with credible evidence." [Record Document 49-1 at 2]. The credibility of evidence is not an issue on summary judgment as all inferences must be made in favor of Hines. *See Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987) (citing *Anderson*, 477 U.S. 242; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987)). Hines has testified to his gross and net income from his lawn care business. [Record

Document 49-2 at 4; 49-4 at 1; 52-1 at 1]. In addition, he presented post-accident receipts, which reveal a gross business income of $1,880 for the week of October 2, 2014 and $1,692 for the week of October 9, 2014. [Record Document 52-3]. Although Hines has presented no documentary evidence of his expenses, he has testified to their amount. [Record Document 52-2 at 8–10].

Although there is a discrepancy between Hines's testimony that his business grosses $3,000 per week and the much lower gross reflected in the receipts, it is not the function of summary judgment to resolve this discrepancy. *See Sanchez v. Young Cty.*, 866 F.3d 274, 282 (5th Cir. 2017) (citing *Devon Enters., L.L.C. v. Arlington Indep. Sch. Dist.*, 541 F. App'x 439, 442–43 (5th Cir. 2013)). Regardless of the exact amount of lost business income, Hines has met his burden of production that he earned income from his lawn care business and that this income has been reduced because his injuries require him to hire another person to physically mow the lawns. However, in order to bear his burden of proof at trial, Hines will still have to demonstrate by a preponderance of the evidence the precise difference between his pre-accident and post-accident business income and the portion of that difference attributable to his injuries.

### 2. Hines's Failure to Report His Business Income on His Tax Returns

Hines did not report the income from his lawn care business on his tax returns. [Record Documents 49-4 and 52-1 at 2]. SSO argues that he cannot recover the loss of any unreported income, [Record Document 49-1 at 2–3], while Hines argues that the lack of tax records is not fatal to his case because income may be proven by other means, [Record Document 52 at 4–5].

The instant case has been brought under general maritime law. [Record Document 2 at 1]. Under maritime law, calculating lost income begins by identifying the plaintiff's gross income, then adding the value of any fringe benefits received, and then subtracting "amounts the wage earner

5

would have been required to pay, such as income tax and work expenses." *Culver v. Slater Boat Co. (Culver II)*, 722 F.2d 114, 117 (5th Cir. 1983), *overruled in part on other grounds*, *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330 (1988). As a result of this calculation, "an award for lost wages under the general maritime law must be based upon after-tax earnings." *Henry v. Candy Fleet Corp.*, Civ. A. No. 98-1747, 2001 WL 121913, at *10 (E.D. La. Feb. 12, 2001) (citing *Myers v. Griffin-Alexander Drilling Co.*, 910 F.2d 1252, 1255 (5th Cir. 1990)).

While tax returns may be "the single best source of evidence on the subject of future earnings," *Bell v. New Hampshire Ins. Co.*, Civ. A. No. 07-138, 2008 WL 2308824, at *4 (E.D. La. June 3, 2008), general maritime law does not require tax returns in order to recover lost wages. Rather, what is required is that a plaintiff be awarded only the net income that she would have received after deducting taxes and work expenses. *Culver II*, 722 F.2d at 117. Therefore, Hines can recover lost income even if he did not report that income on his tax returns, though his recovery is limited to his after-tax income; it will be Hines's burden at trial to establish what his after-tax income would have been had he reported his business income.

The cases upon which Defendant relies do not stand for the proposition that tax returns are a necessary predicate to an award of lost wages. In *Tran v. Abdon Callais Offshore, LLC*, a maritime personal injury case in which the plaintiffs sought to recover lost wages, the plaintiffs' experts calculated Tran's lost wages based on the average wages for similar workers rather than on Tran's own wage history. Civ. A. No. 12-0999, 2014 WL 12538905, at *1–2 (E.D. La. Sept. 22, 2014). Finding that average wages would not establish the extent of Tran's losses, the district court found that Tran's "tax returns should be used as evidence of the actual earnings." *Id.* Here, Hines has not

relied upon average wages; instead, he relies on testimony and receipts from the lawn care business in order to establish his income.

In a related maritime case cited by SSO, the plaintiff's expert calculated the plaintiff's earning capacity on the basis of an income that was $3,000 more than the highest amount reflected on the plaintiff's previous five tax returns. *Mayne v. Omega Protein Inc.*, 370 F. App'x 510, 517 (5th Cir. 2010). The plaintiff's attorney had provided the expert with the higher figure without providing any supporting documentation. *Id.* The Fifth Circuit found that the district court's acceptance of the expert's calculations was error because there was "no *other* evidence or testimony" of the additional earning capacity. *Id.* at 517–18 (emphasis added). Therefore, the Fifth Circuit did not hold that lost income must be proven by a tax return; rather, it held that the income must be proven by some evidence in the record. *See id.*; *see also Myers*, 910 F.2d at 1255–56 (reversing a jury award for lost wages that included income from side employment because the only evidence of the second job or the income derived from it was a "two-sentence exchange" devoid of numerical specificity). Here, Hines has cited to his testimony and receipts; he therefore satisfies the level of proof required at the summary judgment stage.

Therefore, because Hines has raised a genuine issue of fact as to the amount of income he has lost because he can no longer personally operate a lawnmower in his lawn care business, the Court denies SSO's motion on the issue of Hines's ability to recover for lost income from his business.

### B. **Plaintiffs' Medical Expenses**

Both Plaintiffs were insured by BCBSLA through their respective employers. [Record Documents 48-3 at 1 and 51-1 at 1]. On Hines's behalf, BCBSLA paid $39,814.50 in full satisfaction

of $152,216.57 in gross medical billings. [Record Documents 48-3 at 1 and 51-1 at 2]. On Vitto's behalf, BCBSLA paid $42,048.25 in full satisfaction of $215,808.24 in gross medical billings. [Record Documents 48-3 at 1 and 51-1 at 2]. Therefore, the "write-off"[2] amount is $112,402.07 for Hines and $173,759.99 for Vitto. It is unclear whether Plaintiffs ever personally paid any medical expenses.[3]

The Plan Agreements[4] contain the same subrogation provisions:

1. To the extent that Benefits for Covered Services are provided or paid under this Benefit Plan, the Company will be subrogated and will succeed to the right of the Member for the recovery of the amount paid under this Benefit Plan against any

---

[2] The Louisiana Supreme Court has used this term to refer to the difference between the amount a medical provider bills for services and the amount that it accepts from an insurer to satisfy the full claim. *See Bozeman v. State*, 2003-1016, p. 2 (La. 7/2/04); 879 So. 2d 692, 694.

[3] Hines's deposition may indicate that Plaintiffs have not incurred any medical expenses that BCBSLA did not pay:

Q: . . . . The medical expenses you've incurred since your accident on September 27, 2014, have they been paid by Blue Cross Blue Shield?
A: Yes, sir.
Q: Any outstanding medical bills that you know of?
A: No, sir.

[Record Document 38-3 at 5]. Vitto's deposition speaks less assuredly regarding whether he has paid any other medical bills:

Q: But you're not aware whether [BCBSLA] has paid for any of your medical expenses?
A: Not at all, sir.

[Record Document 38-3 at 17]. Thus, the record does not unequivocally indicate whether Plaintiffs personally paid any medical expenses.

[4] Plaintiffs had two different plans available to each of them at the time of the accident. [Record Document 38-1 at 1–2]. Although the parties have not clarified which of the two plans covered each employee, because all four plans contain the same subrogation provisions, this factual determination is immaterial for purposes of the instant motion.

> person, organization or other carrier, <u>even</u> where such carrier provides Benefits directly to a Member who is its insured. The acceptance of such Benefits hereunder will constitute such subrogation. Our right to recover shall be subordinate to the Member's right to be "made whole." The Company will be responsible for its proportionate share of the reasonable attorney fees and costs actually incurred by the Member in pursuing recovery.
>
> 2. The Member will reimburse the Company all amounts recovered by suit, settlement, or otherwise from any person, organization or other carrier . . . to the extent of the Benefits provided or paid under this Benefit Plan. The Company's right to reimbursement shall be subordinate to the Member's right to be "made whole." The Company agrees that it will be responsible for its proportionate share of the reasonable attorney fees and costs actually paid by the Member in pursuing recovery.
>
> 3. The Member will take such action, furnish such information and assistance, and execute such papers as the Company may require to facilitate enforcement of its rights, and will take no action prejudicing the rights and interest of the Company under this Benefit Plan. . . . .

[Record Document 38-3 at 21]. BCBSLA has not intervened in this suit, but has authorized Plaintiffs to "pursue in [their] own name[s] the subrogation interests and claims" of BCBSLA. [Record Documents 51-2 and 51-3].

SSO initially argued that the subrogation provisions prevented Plaintiffs from recovering any medical expenses other than those that they personally paid. [Record Documents 38-1 at 1 and 48-1 at 1]. Because Plaintiffs have presented evidence of their authorization from BCBSLA to pursue the subrogated claims, SSO now argues that Plaintiffs' recovery is limited to the amounts actually paid by BCBSLA. [Record Document 53 at 1]. Plaintiffs argue that the collateral source rule enables them to recover not only the amounts actually paid to health care providers, but also any "write-off" amounts. [Record Documents 42 at 7 and 51 at 2–4]. The resolution of this question turns on whether Louisiana law requires the Court to hold that Plaintiffs can recover the "write-off" amounts and whether the subrogation provisions in the Plan Agreements alter that result.

To facilitate this inquiry, the Court divides the medical expenses into three different categories: (1) any amounts paid by Plaintiffs to their health care providers; (2) the amounts that BCBSLA paid to Plaintiffs' health care providers to which BCBSLA was subrogated, but which BCBSLA has authorized Plaintiffs to collect on its behalf; and (3) the "write-off" amounts initially billed by the health care providers but not actually paid by BCBSLA.

### 1. Amounts Paid By Plaintiffs

To the extent that Plaintiffs personally paid anything to medical providers for care following the alleged accident, Plaintiffs may recover these sums. The subrogation provisions only extend to sums for which BCBSLA is responsible. [Record Document 38-1 at 3 and 42 at 4]. Thus, they do not extinguish Plaintiffs' right to recover sums they paid themselves; in fact, SSO has conceded that "Plaintiffs can . . . recover amounts they personally paid to medical providers." [Record Document 38 at 1]. Therefore, the Court denies SSO's motion for summary judgment to the extent that it seeks dismissal of Plaintiffs' claims for medical expenses that Plaintiffs personally paid.

### 2. Amounts Paid By BCBSLA

BCBSLA paid $39,814.50 on Hine's behalf, and $42,048.25 on Vitto's behalf. [Record Documents 48-3 at 1 and 51-1 at 2]. Because "[s]ubrogation is the substitution of one person to the rights of another," La. Civ. Code Ann. Art. 1825 (2008), BCBSLA, pursuant to the Plan Agreements, acquired the right to proceed directly against SSO. However, BCBSLA then authorized Plaintiffs to pursue BCBSLA's subrogation interests. [Record Documents 51-2 and 51-3]. *See Sutton v. Lambert*, 94-2301 (La. App. 1 Cir. 6/23/95); 657 So. 2d 697, 707 ("A subrogation right can be assigned to the insured, who then has a right of action to enforce it . . . ."). As a result, as SSO now concedes, Plaintiffs "can . . . recover the amounts actually paid by BCBSLA." [Record Document

53 at 3]. Therefore, because BCBSLA has authorized Plaintiffs to enforce its subrogation interests and, consequently, Plaintiffs have a right to collect the amounts paid by BCBSLA, SSO's motion is denied as to the amounts actually paid by BCBSLA to Plaintiffs' medical providers.

### 3. "Write-Off" Amounts

In addition to any amounts they personally paid for medical treatment and the amounts that BCBSLA paid, Plaintiffs also seek to recover from SSO the "write-off" amounts: $112,402.07 for Hines and $173,759.99 for Vitto. In support, Plaintiffs point to the collateral source rule and the holding of the Louisiana Supreme Court in *Bozeman v. State* that a tort victim whose patrimony has been diminished in order to acquire health insurance may recover from the tortfeasor the "full value of medical services provided, including the 'write-off' amount." 2003-1016, p. 22 (La. 7/2/04); 879 So. 2d 692, 706. [Record Document 42 at 3]. SSO asks the Court to find that the subrogation provisions of the Plan Agreements deprive Plaintiffs of the right to recover these amounts because "subrogation is an exception to the collateral source rule." [Record Documents 38-1 at 3–5, 45 at 4–5, and 53 at 2]. Because subrogation extinguishes the right of an original obligee to enforce an obligation, SSO argues that once subrogation occurred as a result of BCBSLA paying benefits, Plaintiffs lost their right to the "write-off" amounts. [Record Document 53 at 1]. In turn, Plaintiffs contend that the requirement of "reimbursement" in the Plan Agreements and BCBSLA's authorization for Plaintiffs to pursue recovery of the payments made by BCBSLA together mean that Plaintiffs are expected to recover the subrogated amounts (which they will then pass on to BCBSLA) and are allowed to proceed against SSO for the "write-off" amounts. [Record Document 51 at 4–5].

Under the collateral source rule, a tort victim's recovery may not be reduced by any amounts she receives from sources not associated with the tortfeasor, such as her health insurance provider.

11

*Bozeman*, 2003-1016, p. 1; 879 So. 2d at 693. The rule enforces three compelling policies: (1) deterring wrongful conduct, *id.* at p. 12; 879 So. 2d at 700; (2) encouraging the purchase of insurance, *id.* at p. 20; 879 So. 2d at 704; and (3) preventing a windfall for a tortfeasor who would face reduced liability if he injured an insured victim, *Bellard v. Am. Cent. Ins. Co.*, 2007-1335, p. 18 (La. 4/18/08); 980 So. 2d 654, 668. Rejecting competing views that a tort victim may always recover a "write-off" amount or that a victim may recover only the amount actually paid to a medical provider, the Louisiana Supreme Court held that a tort victim may recover the "write-off" amount "where plaintiff's patrimony has been diminished in some way in order to obtain the collateral source benefits." *Bozeman*, 2003-1016, pp. 14–22; 879 So. 2d at 701–06. The court concluded that this limitation is necessary in order to prevent a windfall to a tort victim through receipt of a benefit that is not balanced by a previous patrimonial deficit. *Id.* at p. 22; 879 So. 2d at 705–06. Thus, in *Bozeman*, the Louisiana Supreme Court held that a victim whose medical expenses were paid by Medicaid, a collateral source to which the victim did not directly contribute, could not recover the "write-off" amounts. *Id.*; *see also Bellard*, 2007-1335, pp. 23–24; 980 So. 2d at 670–71 (declining to apply the collateral source rule to payments made by an employer's workers' compensation insurer and reducing the amount due to the plaintiff from the employer's uninsured motorist carrier by the amount paid by the workers' compensation insurer).[5] Even though the dispute in *Bozeman* concerned

---

[5] Although in *Cutsinger v. Redfern* the Louisiana Supreme Court refused to apply the collateral source rule even where plaintiff's patrimony had been diminished, 2008-2607, pp. 15–16 (La. 5/22/09); 12 So. 3d 945, 955, the case is distinguishable. Under the facts of that case, Cutsinger paid for her own uninsured motorist coverage; after an accident, she received workers' compensation benefits, and the court held that her uninsured motorist carrier was entitled to reduce its payments to her by the amounts already paid by the workers' compensation insurer. *Id.* Cutsinger's uninsured motorist coverage specifically provided that any recovery under the policy would be reduced by any amounts that she received from workers' compensation. *Id.* at p. 15; 12 So. 2d at 955. There is no

"write-off" amounts that were billed by health care providers but not paid by Medicaid, the Louisiana Supreme Court felt it necessary to resolve a broader question regarding the recovery of "write-off" amounts. In so doing, the court indicated that employer-provided health insurance diminishes an employee's patrimony such that the collateral source rule applies and an injured employee may recover a "write-off" amount:

> Where insurance is provided by the employer, then that fringe benefit is in the nature of deferred compensation. The deferred compensation would have been available to him as cash per paycheck, but for the existence of the deferred compensation plan. Likewise, the benefits of the deferred compensation would have been available but for the injury.

*Bozeman*, 2003-1016, p. 11; 879 So. 2d at 699; *see also Bellard*, 2007-1335, p. 22; 980 So. 2d at 670 ("*[U]nlike . . . employer-provided health insurance*, workers' compensation benefits cannot be considered a fringe benefit in the nature of deferred compensation . . . ." (emphasis added)).

Here, the parties agree that Plaintiffs were "provided health insurance through [their] employer[s] at the time of the accident." [Record Documents 48-3 at 1 and 51-1 at 1].[6] Hence, they

---

comparable language in the Plan Agreements at issue here.

[6] Some ambiguous deposition testimony may indicate that Plaintiffs do not contribute to their health insurance premiums. For instance, Hines has testified:

> Q: And who pays the premiums for your health insurance?
> A: I couldn't tell you.
> Q: As you sit here, are you positive its not through your employer, through St. Mary School Board?
> A: Yes, it probably would be through my – through St. Mary School Board. BlueCross BlueShield?
> Q: Yes.
> A: Yes, they would pay it.
> Q: Okay. So that is paid through your employer?
> A: Yes, sir.

have obtained this insurance coverage by suffering a patrimonial deficit in the form of deferred compensation. Therefore, in light of the decisions of the Louisiana Supreme Court, this Court is compelled to hold that the collateral source rule applies to the "write-off" amounts for which Plaintiffs' medical providers billed but that BCBSLA did not pay.

To avoid this result, SSO argues that the collateral source rule is inapplicable when subrogation is involved. [Record Documents 38-1 at 3–5, 45 at 4–5, and 53 at 2]. If a person (the new obligee) pays a second person (the original obligee) the full amount owed to the original obligee, the obligation is extinguished as to the original obligee; henceforth only the new obligee may enforce it. La. Civ. Code Ann. art. 1826(A) (2008). Thus, where there is full subrogation of an insurer to an insured's rights against a tortfeasor, "[t]he collateral source rule is inapplicable . . . ." *Sutton*, 94-2301; 657 So. 2d at 706–07 (citing *Guillory v. Terra Int'l, Inc.*, 613 So. 2d 1084 (La. Ct. App. 1993)). If BCBSLA were fully subrogated to all of Plaintiffs' rights against SSO, then Plaintiffs would lack a right of action against SSO, and SSO's argument that the subrogation provisions prevent the Court from applying the collateral source rule to the "write-off" amounts would be correct. [Record Document 53 at 1].

However, if an original obligee receives only a partial performance, the new obligee's right to enforce the obligation is subordinate to that of the original obligee, who may proceed against the obligor for the remainder of the performance. La. Civ. Code Ann. art 1826(B); *see S. Farm Bureau*

---

[Record Document 38-3 at 4–5]. However, Hines's testimony is also consistent with the common practice of an employer paying a portion of a premium and the remainder being paid by an employee through payroll deductions. Additionally, even if Plaintiffs' employers paid the entire premium, this would simply be a form of deferred compensation that authorizes a court to apply the collateral source rule. *See Bozeman*, 2003-1016, p. 11; 879 So. 2d at 699 (quoting *Bryant v. New Orleans Pub. Serv. Inc.*, 406 So. 2d 767, 768 (La. Ct. App. 1981), *aff'd*, 414 So. 2d 322 (La. 1982)).

14

*Cas. Ins. Co. v. Sonnier*, 406 So. 2d 178, 180 (La. 1981) ("[S]ubrogation cannot injure the creditor, since, if he has been paid but in part, he may exercise his right for what remains due, in preference to him from whom he has received only a partial payment."). This provision "embodies" the rule that an insured must be "made whole" before an insurer may enforce its right of subrogation. *Global Int'l Marine, Inc. v. U.S. United Ocean Servs., LLC*, Civ. A. No. 09-6233, 2011 WL 2550624, at *6, *10 (E.D. La. June 27, 2011) (citing *New Orleans Assets, L.L.C. v. Woodward*, 363 F.3d 372, 375 (5th Cir. 2004)).

In the instant case, Plaintiffs are the original obligees; SSO is the obligor, bound to repair the damage that it has allegedly caused to Plaintiffs. Under the rule articulated by the Louisiana Supreme Court in *Bozeman*, Plaintiffs were initially entitled to recover from SSO the entire face value of their medical bills, including the "write-off" amounts. 2003-1016, p. 22; 879 So. 2d at 706. When BCBSLA paid a portion of the medical charges, BCBSLA was subrogated to Plaintiffs' rights to proceed against SSO for that portion. Plaintiffs retained preferential rights over BCBSLA because BCBSLA was only partially subrogated to their rights against SSO. *See* La. Civ. Code Ann. art 1826(B). While an original obligee may waive her preferential right, she may not do so where she has been injured by an obligor's negligence or intentional conduct. *Id.* Plaintiffs have been injured by SSO's alleged negligence and so could not have waived their preferential rights. Moreover, the Plan Agreements provide that BCBSLA is subrogated "to the right of the Member for the recovery *of the amount paid* under this Benefit Plan." [Record Documents 48-3 at 1 and 51-1 at 2] (emphasis added). The Plan Agreements thus limit BCBSLA's rights as a subrogor to the amounts that BCBSLA actually paid. Therefore, because BCBSLA was only partially subrogated to Plaintiffs'

15

rights, Louisiana law requires the Court to conclude that Plaintiffs can recover the remaining amounts originally billed by their health care providers.

The cases relied upon by SSO do not stand for the proposition that an insurer who pays medical providers an amount that they accept in full satisfaction of the amount originally billed is subrogated to that entire amount. None of the cases explicitly address the issue before the Court—whether an insured tort victim can recover the "write-off" amounts from a tortfeasor. For instance, *Sutton v. Lambert* states that "the collateral source rule is inapplicable where the right of subrogation is involved . . . ." 94-2301; 657 So. 2d at 706–07. However, the *Sutton* court goes on to note that if "subrogation is proven, the plaintiff may recover only his *remaining* interest in the partially subrogated claim." *Id.* (emphasis added). As a result, the *Sutton* court prevented the plaintiff from receiving a double recovery of his medical expenses—first from his insurer and then again from the tortfeasor. *Id.* Here, Plaintiffs have an interest in the "write-off" amounts that remained after BCBSLA paid the health care providers. Because the "write-off" amounts were never actually paid by BCBSLA, Plaintiffs will not receive the double recovery that concerned the *Sutton* court. Similarly, in *Hoffman v. Halcot Shipping Corp.*, the Fifth Circuit described subrogation as an "exception" to the collateral source rule. 93 F. App'x 658, 660 (5th Cir. 2004). Although SSO contends that this supports its claim that the subrogation provisions preclude Plaintiffs from recovering the "write-off" amounts, the *Hoffman* court merely held that a victim could not recover medical expenses "that had *already* been paid." *Id.* at 660–61 (emphasis added). Inherent in the definition of a "write-off" amount is that it has not been paid to the medical provider. As a result, *Hoffman* does not support SSO's contention that Plaintiffs cannot recover the "write-off" amounts.

Therefore, the Court holds that the subrogation provisions in the Plan Agreements do not prevent Plaintiffs from recovering the "write-off" amounts of $112,402.07 for Hines and $173,759.99 for Vitto. This holding reflects the requirements of Article 1826(B) of the Louisiana Civil Code as well as the language of the Plan Agreements. This holding also complies with the choice of the Louisiana Supreme Court in *Bozeman* to allow an insured tort victim to recover "write-off" amounts even though these amounts represent losses that a tort victim did not actually incur. Applying the Louisiana Supreme Court's reasoning to the instant case, Plaintiffs' ability to be relieved of paying the "write-off" amount results from the patrimonial diminution they experienced through the deferred compensation regime of their employer-provided insurance. The Court thus denies SSO's motion for summary judgment on this claim.

### 4. SSO's Motion in Limine

In its motion in limine, SSO raised the same arguments as it later did in its motion for summary judgment on the issue of health care expenses. [Record Documents 38, 38-1 and 48-1]. The collateral source rule is both a substantive rule and an evidentiary rule. *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994) (citing *Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 929–30 (5th Cir. 1992)). The analysis of the evidentiary rule replicates the analysis of the substantive rule. *See, e.g.*, *Phillips*, 953 F.2d at 931–33. Therefore, for the reasons discussed above with regard to the motion for summary judgment on the issue of medical expenses, the Court denies SSO's motion in limine.

## IV. Conclusion

Therefore, in light of the foregoing, SSO's Motion in Limine Regarding Past Medical Expenses Paid by Third Party Insurer [Record Document 38], Motion for Partial Summary Judgment Regarding Plaintiffs' Claims for Past Medical Expenses [Record Document 48], and Motion for

Partial Summary Judgment Regarding Hines's Claim for Economic Loss [Record Document 49] are

**DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this \_\_17th\_\_ day of November, 2017.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE